FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
5/12/2026 2:33 PM
BERNICE A. RAMOS
CLERK OF THE COURT
Kathleen Morin

STATE OF NEW MEXICO
DONA ANA COUNTY
THIRD JUDICIAL DISTRICT COURT

WILLIAM O. BREEDLOVE IV,
ROBERT SHAWN BREEDLOVE and
KIMBERLY ANN HOFFMAN,

       Petitioners,

v.

                                  case no. D307-CV-2026-00447

CORINE BREEDLOVE,

       Respondent

## ANSWER AND COUNTERCLAIMS

TO THE HONORABLE COURT:

1.    Respondent Corine Breedlove files and serves this response to the Petition for Partition filed to open this case on 2/10/26 ("the Petition")

2.    Respondent denies paragraphs 1-2 of the Petition. Attached hereto is a true copy of the Breedlove Trust A. Respondent is the Trustee of the Breedlove Trust A

3.    Respondent denies paragraphs 15, 23 and 24 of the Petition

4.    A number of paragraphs of the Petition do not state facts - they state Petitioners' "requests" and miscellaneous alleged laws. Respondent denies that Petitioners are entitled to the relief they request

## CounterClaims

5.    Respondent has been lawfully, ceremonially married to Petitioners' father William O Breedlove III ("William") since February 8, 2003.   Petitioners are William's children from a prior marriage.  Respondent also has a child from a prior marriage  -  Alex Bonnet

6.    When they married, Respondent and William decided to build a new home together.   Each contributed their own separate property they had prior to the marriage, and in July 2004 construction was completed on the residence at 2260 Laguna Drive in Las Cruces.   They promptly moved in and have maintained the home as their permanent residence since that time

7.    Respondent and William have had a good and lengthy marriage

8.    Respondent is now 84 years of age.   William is 92 years of age

9.    William's Will is also attached hereto

10.    Respondent's existing estate plan mirrors William's.   Because they each brought substantial separate property into the marriage, they have each established that their property goes to trusts for the support of the surviving spouse during the lifetime of the surviving spouse.   Then the remainder of the trust assets go to their respective children from prior marriages.   Respondent's child Alex Bonnet gets the remainder of the Nance Trust and Petitioners get the remainder of the Breedlove Trust A

11.   As the Court can see for itself from the Breedlove Trust A, Respondent is Trustee of the trust and may reside in the marital residence (the real property that Petitioners now seek to forcibly remove her from and sell) until she dies

12.   Petitioners are not willing to wait until Respondent dies to get their hands on their daddy's money, so as an effort to receive William's assets sooner Petitioners have now commenced a campaign of hate and harassment against Respondent and her son Alex Bonnet. Their goal is to bully, threaten and intimidate Respondent until they get money they are not entitled to including Respondent's community marital property. This baseless instant lawsuit they use to perpetrate their greedy schemes

13.   Petitioners have concocted up at least three (3) other malicious abuses of legal process against Respondent as part of their greedy schemes: a sham Colorado divorce petition filed in August 2025 that they unduly influenced William to sign then caused to be dismissed shortly thereafter, a sham lawsuit they caused to be filed as case no. 3:25-cv-296 in the United States District Court in El Paso then also caused to be dismissed soon after, then another sham lawsuit they caused to be filed as case no. 3:26-cv-831 in the United States District Court in El Paso which is currently pending

14.   In 2023 William began suffering from dementia. His mental decline has increased considerably since then

15.    Respondent began having to assist William more and more with his activities of daily living.   Petitioners made occasional visits, rarely exceeding one (1) day at a time, and showed little interest in helping Respondent with William's care

16.    On or about February 26, 2025  Respondent was taken to the hospital where she stayed for two (2) days to recover from serious stress-related conditions caused by her own advancing age, poor health and the demands of caring for William the previous 2 years

17.    On or about March 5, 2025 William was in turn taken to a hospital as a result of his condition.  Petitioner Kimberly Ann Hoffman ("Kim") subsequently, with no-one's permission and without notice to Respondent or Respondent's son, physically removed William from the health care facility he was in and transported him to her home in Colorado

18.    Since shortly after March 5, 2025 Petitioners have been in possession and control of William's person body and his financial accounts including Respondent's marital community property

19.    Since shortly after March 5, 2025 Petitioners have exercised a fiduciary position of special confidence between and among themselves and William. Petitioners have abused this position and breached those fiduciary duties

20.    Petitioners have been secretive about their activities with William but on information and belief, Petitioners have exercised an unlawful undue influence on

4

him to coerce William into signing various papers that change or attempt to change his estate plan and give themselves control over his estate, which includes Respondent's marital community property

21.   Respondent has been harmed and damaged by Petitioners' breaches of their fiduciary duties and unlawful undue influence put upon William

22.   As part of their undue influence on William, Petitioners have regularly slandered and defamed Respondent and her son with false and disparaging statements and information to William about Respondent and her son

23.   Petitioners have taken William's phone and other means of communicating away from William and will not allow him to contact Respondent. Petitioners will not allow Respondent to have contact with William

24.   Petitioners' cruel, intentional, outrageous and reckless behavior described above has caused Respondent mental anguish and emotional distress

25.   Respondent as counter-claimant hereby petitions the Court for its Declaratory Judgment, after sufficient fact-finding about the undue influence, that all products of undue influence on William are void and rescinded

26.   Respondent as counter-claimant hereby sues Petitioners for malicious abuse of process, breach of fiduciary duty, prima facie tort, undue influence, conversion and theft of her community property

27.    Respondent as counter-claimant hereby sues Petitioners for slander, defamation, false light invasion of privacy and intentional infliction of mental anguish and emotional distress

28.    Respondent hereby sues Petitioners for a complete accounting of William's property that they have any knowledge of or have exercised any type of control over since January 1, 2025. This property includes Respondent's marital community property

29.    Respondent should have final judgment against Petitioners for all her nominal, actual and/or special damages caused by Petitioners' torts. Respondent should also have final judgment against Petitioners for exemplary damages

WHEREFORE, Respondent prays the Court will:  enter Judgment that Petitioners take nothing on their claims;  set aside all products of Petitioners' undue influence;  compel Petitioners to make a complete accounting of Williams' property that they know of or have exercised any form of control over;  enter judgment against Petitioners in favor of Respondent for all Respondent's lawful damages caused by Petitioners;  award Respondent pre-judgment and post-judgment interest, her costs and exemplary damages;   AND  -

Grant such other and further relief as the Court finds proper

RESPECTFULLY SUBMITTED,

By:

Sidney P. Childress, Lawyer
1925 Aspen Dr. #600A
Santa Fe, NM 87505
(505) 433 - 9823
childresslaw@hotmail.com
Attorney for Respondent Corine Breedlove

## CERTIFICATE OF SERVICE

I caused this document to be served electronically through the Odyssey File and Serve System the same date it was filed. All counsel of record were served as set forth on the Notification of Service for Case

7



# FIRST AMENDMENT AND RESTATEMENT TO THE

## BREEDLOVE TRUST A

## TABLE OF CONTENTS

I.      DESIGNATION OF TRUST ...................................................................2

II.     PURPOSE ...........................................................................................2

III.    POWER OF AMENDMENT AND
        REVOCATION - REVOCABILITY .........................................................2

IV.     ADDITIONS TO PRINCIPAL .................................................................3

V.      WITHDRAWALS OF PRINCIPAL ..........................................................3

VI.     TRUSTEE'S ADMINISTRATION OF
        TRUST DURING GRANTOR'S LIFETIME ..............................................3

VII.    DISPOSITIONS UPON DEATH OF GRANTOR ......................................4

VIII.   UTILIZATION OF THE TERM "TRUSTEE" .............................................9

IX.     TRUSTEE'S RIGHTS AND POWERS .....................................................9

X.      TRUSTEE'S ACCOUNTING .................................................................13

XI.     TRUSTEE'S RESIGNATION .................................................................14

XII.    SUCCESSOR TRUSTEE .....................................................................14

XIII.   PAYMENT OF DEBTS, ESTATE TAXES
        AND ADMINISTRATION COSTS ..........................................................15

XIV.    SPENDTHRIFT PROVISION ................................................................16

XV.     CONTINGENT TERMINATION PROVISION ...........................................16

XVI.    INCONTESTABILITY ...........................................................................16

XVII.   APPLICABLE LAW ..............................................................................17

# FIRST AMENDMENT AND RESTATEMENT TO THE
## BREEDLOVE TRUST A

WHEREAS, the undersigned, WILLIAM O. BREEDLOVE, III, City of Las Cruces, County of Dona Ana, State of New Mexico, entered into the BREEDLOVE TRUST A, (formerly known as Trust A of the "WILLIAM OTWAY BREEDLOVE, III and JO ANN BREEDLOVE REVOCABLE TRUST AGREEMENT", dated January 11, 1993), with WILLIAM O. BREEDLOVE, III as Trustee, and

WHEREAS, by the terms of the Trust Agreement WILLIAM O. BREEDLOVE, III reserved the right at any time to modify the Trust Agreement in whole or in part pursuant to the provisions of Article VIII thereof, without the consent of any person and without notice to any person other than the Trustee, and

WHEREAS, the Grantor desires to amend and restate the Trust in its entirety.

NOW, THEREFORE, in consideration of the foregoing, the undersigned makes the following amendment and restatement to the Trust Agreement:

| | | |
|---|---|---|
| "STATE OF NEW MEXICO | ) | REVOCABLE |
| | ) ss. | TRUST AGREEMENT |
| COUNTY OF BERNALILLO | ) | |

This Trust agreement, made this 7th day of July, 2003, is by and between WILLIAM O. BREEDLOVE, III, City of Las Cruces, County of Dona Ana, State of New Mexico, who is hereinafter referred to as the "Grantor," and WILLIAM O. BREEDLOVE, III, and CORINE N. BREEDLOVE who are hereinafter referred to as the "Trustees." If WILLIAM O. BREEDLOVE, III or CORINE N. BREEDLOVE is unable or unwilling to serve as a Trustee, then the one of them who is willing and able shall serve as sole Trustee. In the event neither WILLIAM O. BREEDLOVE, III nor CORINE N. BREEDLOVE are able or willing to serve as Trustee hereunder, then WILLIAM OTWAY BREEDLOVE, IV shall serve as Successor Trustee. In the event WILLIAM OTWAY BREEDLOVE, IV is unable or unwilling to serve as Trustee hereunder, then ROBERT SHAWN BREEDLOVE shall serve as Successor Trustee. In the event ROBERT SHAWN

BREEDLOVE is unable or unwilling to serve as Trustee hereunder, then KIMBERLY ANN HOFFMAN shall serve as the sole Successor Trustee.    The term "Trustee" utilized throughout this agreement is understood to mean either individual, joint, corporate or Successor Trustees.

WHEREAS, the Grantor, desires to convey, assign and transfer to the Trustee and Trustee's successors in office the property described in Schedule A annexed to this agreement for the purposes and under the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, it is hereby agreed as follows:

## I. DESIGNATION OF TRUST

1.1    This Trust shall be known as the "BREEDLOVE TRUST A." The Grantor is married to CORINE N. BREEDLOVE.  Each of them has substantial separate property which shall be held by their respective Revocable Trusts. However, the Grantor recognizes that any property he holds in joint tenancy with CORINE N. BREEDLOVE shall pass to her by operation of law, if she survives the Grantor.

## II. PURPOSE

2.1    The Grantor desires an arrangement whereby the Trustee can hold and manage assets while the Grantor is living.  In addition, the Grantor desires a receptacle which can receive assets from the Grantor's estate and proceeds of life insurance policies insuring the life of the Grantor. The Grantor also wishes to establish a mutual plan for the benefit, conservation and eventual disposition of the assets constituting the Grantor's estate.

2.2    The Trust is primarily for the benefit of the Grantor while the Grantor is living and after the Grantor's death for the benefit of the Grantor's beneficiaries named in this Agreement.

## III. POWER OF AMENDMENT AND REVOCATION - REVOCABILITY

3.1    The Grantor may amend, modify or revoke this Trust Agreement, in whole or in part, by a writing delivered to the Trustee.

2

3.2    Any amendment, modification or revocation shall be effective immediately upon written notice to the Trustee, except that changes with respect to the Trustee's duties, liabilities or compensation shall not be effective without Trustee's consent. If the Grantor is the Trustee, no written notice shall be required.

## IV.  ADDITIONS TO PRINCIPAL

4.1    The Grantor may transfer and convey assets to the Trustee during the Grantor's lifetime and may make the Trustee the beneficiary of life insurance policies. The assets initially transferred to the Trustee and the life insurance policies initially made payable to the Trustee shall be listed on Schedule "A" which is attached hereto and by this reference incorporated herein.  Other assets may be transferred to the Trust from time to time.  In addition, the Grantor may add to the Trust by devise, bequest or otherwise.

4.2    Assets transferred to the Trustee shall be held by the Trustee as the separate property of the Grantor under the property laws of the State of New Mexico.

## V.  WITHDRAWALS OF PRINCIPAL

5.1    The Grantor may at any time withdraw property from the Trust.

## VI. TRUSTEE'S ADMINISTRATION OF TRUST
## DURING GRANTOR'S LIFETIME

6.1    During the lifetime of the Grantor, the Trustee shall pay to or apply for the benefit of the Grantor all the net income of the Trust in monthly or other convenient installments, unless the Grantor authorizes the Trustee to retain all or part of such income in the Trust.

6.2    In addition to the net income of the Trust, the Trustee shall distribute to the Grantor, upon the Grantor's written direction, so much of the Trust principal, up to the whole thereof, as the Grantor shall direct.

6.3    If the Grantor becomes disabled or incapacitated (in the written opinion of the Grantor's attending physician, which is confirmed by a second physician's written opinion), the Trustee (or the Successor Trustee where the Grantor is serving as the sole Trustee) shall be fully authorized to pay to, or apply for the benefit of the Grantor, such sums of income and principal of the Trust as, in Trustee's discretion, shall be necessary or advisable from time to time, for the medical care, maintenance and support of the Grantor,

3

taking into consideration all other income available to the Grantor for such purposes from all sources known to the Trustee. Disability shall be defined to be a substantial impairment of the Grantor's ability to care for the Grantor's property for any cause or reason. Furthermore, in the event of such incapacity or disability or if the Grantor is missing or the Grantor's whereabouts are unknown for a period of two (2) weeks, the Trustee is hereby constituted and appointed and by these presents made the true and lawful attorney for the Grantor in the Grantor's name, place and stead pursuant to the Power of Attorney executed in conjunction with this Trust Agreement. In the event of incapacity or disability, Trustee is hereby authorized and requested to transfer the Grantor's assets into the Trust and to do all acts necessary to accomplish such transfer(s) and to hold, administer and distribute such property as Trust corpus in addition to all of the assets which had previously been placed in the Grantor's Trust. The Grantor hereby ratifies and confirms all lawful acts which may be done by the Grantor's attorney-in-fact.

6.4    If the Trustee shall receive a certificate in writing from the Grantor's attending physician, as certified by a second physician's written opinion, that the Grantor is no longer incapacitated or disabled, or if the Grantor's whereabouts again become known, then the powers reserved for the Trustee in Article IX shall cease and the Grantor's powers under this Trust shall be restored.

## VII.  DISPOSITIONS UPON DEATH OF GRANTOR

7.1    Dispositions After Death of Grantor.  Upon the death of the Grantor, the remaining principal and undistributed income in the Trust, or distributed to the Trust through the probate of the Grantor's Will, shall be distributed in accordance with the dispositive provisions set forth below.

A.    Trust for Surviving Spouse. It is the Grantor's intention that this Trust not qualify for the unlimited marital deduction. This Trust shall be established in the event CORINE N. BREEDLOVE survives the Grantor, is married to him and residing with him at the time of his death. The Trust shall continue for the benefit of CORINE N. BREEDLOVE until the earlier of her death, or her remarriage. Until CORINE N. BREEDLOVE'S interest in the Trust is terminated by her death or remarriage, the investment of Trust assets and distributions from the Trust shall be made under the following terms and conditions:

4

1.    Personal Residence. CORINE N. BREEDLOVE shall have the right to use any personal residence owned (partially or completely) by this Trust as her personal residence, without the requirement for her to pay rent. However, she shall be required to pay all the expenses of maintaining the residence from her income distributions from this Trust, or from her other resources outside of this Trust. The expense of maintaining the personal residence shall include, but not be limited to, the payment of property taxes, liability homeowners insurance, adequate comprehensive casualty insurance, any mortgage payments, or payments on any other encumbrances, utilities, repairs, maintenance and any improvements made to the residential real estate during the time it is held for her use as a personal residence. She shall have the right to require the Trustee to sell the residence, or Trust A's interest in the residence, and to invest such funds in a replacement personal residence, or to add the funds to the other investments of Trust A.

2.    Vehicles. CORINE N. BREEDLOVE shall also be permitted to use any vehicles owned by Trust A, without the requirement for her to pay any rent or other compensation to the Trust for such use. However, she shall be required during all periods of time in which a vehicle is held in the name of the Trust, which is available for her use, to pay all expenses of operation and maintenance of such vehicles. The maintenance expenses shall include, but not be limited to, all repairs, routine maintenance, tires, batteries and other expendable items, liability and comprehensive casualty insurance commensurate with the value of the vehicle(s) and any state law requirements. She shall have the power to instruct the Trustee to sell any vehicle(s) held in Trust A and to have the Trustee utilize the funds received to purchase a new vehicle, or contribute to the purchase of a new vehicle, and Trust A shall own the proportionate share of such vehicle as is represented by its payment towards the total purchase price, as compared to payment towards the total purchase price made from sources outside of the Trust, if any.

3.    Investment Instructions. Any proceeds from life insurance policies, bank accounts and the existing investments held in the name of Trust A that are received by the Trust after the Grantor's death, shall be invested or reinvested into the USAA Income Fund, or a comparable income fund with another company unanimously approved

5

by the Trustee, CORINE N. BREEDLOVE and the person designated to serve as the next Successor Trustee, who is surviving at that time.

4.    Income Distributions. The Trustee shall distribute to CORINE N. BREEDLOVE all of the net "income" of Trust A each year, in quarterly or more frequent installments. For purposes of this Trust Agreement, the term "income" shall include interest, dividends, and capital gains earned after the date of death of the Grantor which are actually realized by Trust A during the year. Income shall also include any net rental income earned by Trust A after the payment of all expenses of such rental unit, including an appropriate reserve for depreciation. Income shall also include the entire amount received by Trust A from any annuity payments, even though the Grantor recognizes that some portion of each payment may represent a return of capital on his original investment in such annuity.

5.    Restriction on Distribution of Principal. The principal of Trust A shall not be distributed to, or expended for the benefit of, CORINE N. BREEDLOVE, with the exception of distributions made for long-term care needs or for her emergency expenses for health, support and maintenance. Additionally, no distributions from the principal of Trust A shall be made for these purposes unless, and until, the assets and resources available to CORINE N. BREEDLOVE outside of Trust A have been substantially consumed, excluding her interest in her personal residence.

B.    Death or Remarriage of Surviving Spouse. Upon the earlier of the death or remarriage of CORINE N. BREEDLOVE, or in the event she predeceases the Grantor, the remaining balance of Trust A, including any undistributed income, shall be distributed in the manner provided in paragraph 7.2 below.

7.2    Final Distribution of Trust Estate. The balance remaining in Trust A after the death of both the Grantor and CORINE N. BREEDLOVE, or upon the earlier remarriage of CORINE N. BREEDLOVE, shall be divided into three (3) equal shares, one share for each child of the Grantor, namely WILLIAM OTWAY BREEDLOVE, IV, ROBERT SHAWN BREEDLOVE and KIMBERLY ANN HOFFMAN. Each child's share shall be distributed to him or her at the earliest convenient date. Until such time as the Trust share has been completely distributed, the income and principal distributions from a child's Trust share

6

shall be made under the following terms and conditions:

A.    Income Distributions. Prior to complete distribution of a child's Trust share, the Trustee shall have the authority to make distributions of the net income of such child's Trust share for the child's health, education, support and maintenance, in the Trustee's sole and absolute discretion. Any income not distributed within sixty-five (65) days after the end of each year shall be added to trust principal.

B.    Discretionary Principal Distributions. Until a child's Trust share has been completely distributed as provided above, the Trustee shall be authorized to make discretionary distributions of Trust principal from a child's Trust share for his or her health, education, support and maintenance. The Trustee shall consider the other resources and income available to such child in determining whether to make distributions of principal from such child's Trust share. The Trustee shall only be responsible for taking into consideration any resources and income actually known to the Trustee without the requirement that such Trustee conduct any additional investigation. However, the Trustee shall be authorized to make any investigation the Trustee deems appropriate under the circumstances.

7.3    Tangible Personal Property List. The Trustee is instructed to comply with the instructions to the Personal Representative contained in the Grantor's Last Will and Testament pertaining to the disposition of the Grantor's tangible personal property pursuant to a tangible personal property list pursuant to Section 45-2-513 New Mexico Statutes Annotated (N.M.S.A.) (1978). If such list exists, the disposition of such tangible personal property shall be governed by such list and not by the dispositive provisions contained in this Article VII of the Trust.

7.4    Distribution of Deceased Child's Share. In the event a child of the Grantor predeceases the Grantor or dies prior to complete distribution of his or her Trust share, such Trust share shall be distributed to such deceased child's surviving issue, per stirpes, pursuant to the terms of this Trust. If there are no surviving issue, then such deceased child's Trust share shall be divided equally and added to the Trust share established for the benefit of the other children of the Grantor, pursuant to the terms of this Trust. If another

7

child is also deceased, such Trust share shall be distributed for the benefit of such deceased child's surviving issue, per stirpes, pursuant to the terms of this Trust.

7.5    Terms for Distributions to Younger Contingent Beneficiaries. Whenever, pursuant to the provisions of this Trust, all or part of a Trust share passes to grandchild or more remote descendant of a child of the Grantor (hereinafter referred to as "descendant") under the age of twenty-five (25) years at the time such Trust share is established, the Trustee shall hold and distribute such descendant's share in Trust. The Trustee shall use and expend so much of the income and principal of such Trust share as the Trustee deems necessary or desirable for the health, education, support and maintenance of such descendant until complete distribution of such descendant's Trust share has been accomplished. When a descendant attains the age of twenty-one (21) years, the Trustee is instructed to consider distributing all accumulated income to such descendant, and thereafter, to consider distributing income to a descendant annually. When a descendant either attains the age of twenty-five (25) years or obtains a bachelor's degree from an accredited four (4) year college, whichever occurs first, the remaining principal may be distributed to a descendant by written request to the Trustee.

In the event a descendant of a child of the Grantor should die before complete distribution of his or her Trust share, then such deceased descendant's share shall be held and distributed to his or her issue, per stirpes, pursuant to the terms of this Trust. If there are no surviving issue, then such Trust share shall be distributed equally to such deceased descendant's brothers and sisters, per stirpes, pursuant to the terms of this Trust, or if there are none, then to the Grantor's other descendants, per stirpes, pursuant to the terms of this Trust.

Irrespective of the foregoing, if any Trust created for a descendant of a child of the Grantor would be in violation of the rule against perpetuities, such Trust shall terminate within the time prescribed by the rule, unless a new perpetuities period is allowed for an appointed interest, and such Trust shall be distributed by the Trustee to such descendant(s).

7.6    Trustee's Power to Delay Distributions. Irrespective of the foregoing, the Trustee shall have the sole discretion to delay any proposed distribution for a reasonable

8

time (subject to the laws relating to generation skipping transfer and the rule against perpetuities) to a child, grandchild or other descendant of the Grantor (hereinafter referred to as beneficiary) if, at the time of a proposed distribution, a beneficiary is mentally incapacitated or is, in Trustee's opinion, unable to properly manage such assets or for other reasons such as alcoholism, drug or substance addiction, bankruptcy or divorce, or during incarceration. In such event, Trustee may distribute income and principal for the beneficiary's health, education, support and maintenance at the Trustee's discretion. In the event a beneficiary has filed a petition in bankruptcy or is adjudicated a bankrupt, then in no event may a distribution of income or principal be made to such beneficiary until one hundred eighty one (181) days after the petition is filed or the beneficiary is adjudicated a bankrupt. If, in Trustee's opinion, the inability to manage assets for any of the foregoing reasons has ceased, the Trustee may make the proposed distribution.

7.7    Disaster Clause. In the event there are no living descendants of the Grantor entitled to the distribution of the Trust estate and no other disposition of the property is directed by this instrument, the remaining portion of this Trust estate shall be distributed to the persons who would inherit the property of the Grantor pursuant to the New Mexico laws of descent and distribution, which are in force at the time stipulated for distribution, as if the Grantor had died intestate 120 hours after such time, unmarried, domiciled in the State of New Mexico and survived only by such persons.

7.8    Definitions. The words "child," "children," and "issue" used in this Trust shall include lineal descendants and children who were legally adopted when they were under the age of eighteen (18) years.

## VIII. UTILIZATION OF THE TERM "TRUSTEE"

8.1    The term "Trustee" utilized throughout this Agreement is understood to mean either individual, joint or Corporate Trustees. The term shall also include any Successor Trustee succeeding or appointed pursuant to Article XII, hereof.

## IX. TRUSTEE'S RIGHTS AND POWERS

9.1    Subject to the provisions of this Trust relating to retained powers, and except as otherwise provided in this Trust, the Trustee shall have all such rights, powers and

9

discretions as may be necessary or appropriate for effective administration of the Trusts, including but without limitation:

A.    To accept any or all of the settlement options contained in any of the policies of life insurance held by Trustee in lieu of electing to receive the face amount of such policies, if Trustee deems such action on Trustee's part to be beneficial to the purposes of the Trusts established hereunder.

B.    To pay all costs, charges and expenses of the Trust, including a reasonable compensation to the Trustee for Trustee's services hereunder and reimbursement for out-of-pocket costs resulting from administration of this Trust.

C.    To operate, maintain, repair, rehabilitate, alter, improve or remove any improvements on real estate; to make leases and subleases for terms of any length, even though the terms may extend beyond the termination of the Trust; to subdivide real estate; to grant easements, give consents and make contracts relating to real estate or its use; to release or dedicate any interest in real estate; to sell, assign, transfer and convey, with or without warranty, any interest in real estate at such time or times as the Trustee shall determine and upon such terms and conditions as the Trustee may deem proper including the sale under contract to convey or by note and mortgage or deed of Trust; to exchange interests in real property and in connection with any such exchanges to assume mortgages or other liens as Trustee; to grant options, to sell or exchange interests in real property.

D.    To purchase, sell, retain, exchange, invest and reinvest in real and personal property of all kinds, including but not limited to stocks, bonds, mutual fund securities, common Trust funds maintained by the Trustee, notes and other securities of every kind, in Trustee's name or in the name of Trustee's nominee, with or without disclosure of the fiduciary capacity, except that the Trustee shall not invest the Trust, or any portion thereof, in unproductive property nor retain in said Trust beyond a reasonable time, any property which may be or become unproductive. The Trustee may, however, retain unproductive property received into the Trust from the Grantor or the Grantor's probate estate and shall not be required to make such property productive.

E.    To participate fully in corporate reorganizations and readjustments.

F.    To vote upon stocks by proxy or otherwise.

G.    To employ and compensate attorneys, accountants, agents and brokers.

H.    To determine all questions with respect to the manner in which expenses are to be charged and receipts are to be credited as between principal and income in accordance with the New Mexico Principal and Income Act now in effect or any future amendments thereto or substitution therefor.

10

I.    To borrow for Trust purposes from any lender, including the Trustee, extend mortgages and encumber by mortgage or pledge any Trust property.

J.    To divide and distribute the Trust in cash or in kind, or partly in cash and partly in kind, and to determine values conclusively for that purpose.

K.    To continue and conduct at the risk of the Trust any business or enterprise in which the Grantor may be engaged at the time of the Grantor's death.

L.    To make secured or unsecured loans from the Trust to the Personal Representative of the Grantor's estate without responsibility or liability for any loss resulting to the Trust estate from such loans.

M.    To establish or continue an already established street name account with any brokerage firm, to establish or continue an already established margin account with any brokerage firm, to borrow monies from any brokerage firm to purchase securities and to pledge any asset of the Trust estate as collateral security for such borrowing, without liability on the part of any brokerage firm to see to the application thereof.

N.    The Trustee, in exercising powers, shall not be limited to any law now existing or which may hereafter be enacted relating to the investment of Trust funds. The Trustee shall not be required to obtain the approval of any beneficiary or of any court as to any act performed by Trustee or in the exercise of any rights and powers granted to Trustee hereunder.

O.    To make elections authorized by law for income and estate tax purposes. Any act of any of the Trustees hereunder regarding tax elections shall be binding and conclusive on all parties whomsoever.

P.    The Trustee may make payments of income or principal to any beneficiary in person, or upon his or her personal receipt, or may, at his or her direction, or in the Trustee's discretion, deposit the payments in any bank to the credit of such beneficiary in any account carried in his or her name, or jointly with another. Payments or distributions to a beneficiary may, in the Trustee's discretion, be made by the Trustee directly to such beneficiary, to a beneficiary's legal representative or to any other person having the care and control of the beneficiary, or by the Trustee making such payments directly for the benefit of such beneficiary.

Q.    The Grantor, whether serving as Trustee or not, shall have the power to buy, sell, and trade, preferred or common stocks, bonds, options, commodities and other securities on margin or otherwise, money market and mutual (including index) funds, common Trust funds maintained by the Grantor's fiduciary, and other pooled investment arrangements, and to withdraw cash or securities, on brokerage or security accounts of the Grantor held in the name of the Trustee for the Grantor until such powers are revoked. The Grantor and the Trustees ratify and confirm any and all such transactions made by the

11

Grantor, or the Trustee, either as principal or as agent. Trustee may also act as agent under a power of attorney granted to the Trustee by the Grantor as to such security or brokerage accounts. Such brokerage or security firm shall be indemnified and held harmless by the Grantor until the powers granted hereunder are revoked.

R.    To make distributions, divisions, or allocations in cash or in kind, including in undivided interests, by pro rata or non-pro rata division, or in any combination of these ways in the discretion of the Trustee; and on termination of the estate or Trust, to distribute property to a custodian for a minor beneficiary under the Gift or Transfers to Minors Act of any estate, or to use any other means of making distribution to a minor under applicable law or terms of this Trust.

S.    If the Trust provisions do not otherwise provide for the establishment of Subchapter S Trusts and if it is determined that the S corporation status of a company, if any, shall be retained, then an independent Trustee shall have the authority to establish qualified Subchapter S Trusts pursuant to I.R.C. Section 1361(d), as amended, and to do all acts necessary pursuant to such statute or related statutes to preserve the status of qualified Subchapter S Trusts.

T.    To terminate the Trust or a Trust share, in the discretion of the Trustee, when the principal of a Trust share has a value of not more than Fifty Thousand and no/100ths Dollars ($50,000.00) and distribute such assets to the designated beneficiaries, or if minors, to the legal or natural guardians of such beneficiaries.

U.    In the event of the Grantor's disability, to continue the Grantor's charitable gift giving practices, if any, as reflected in the Grantor's prior income tax returns and to continue a pattern of gift giving to descendants which does not exceed the annual gift tax exclusion for each donee.

V.    The Trustee is authorized to employ attorneys, accountants, investment advisors, specialists and such other agents as he or she shall deem necessary or desirable. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the Trust and to delegate to said manager investment discretion. Such appointment shall include the power to acquire and dispose of such assets. The Trustee may charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against the Trust.

W.    Provided, however, that it is the intent of the Grantor that all lifetime gifts be treated as though the property, which is the subject of the gift, had first been withdrawn by the Grantor from this Trust and then transferred to the donees of the gifts by the Grantor. It is suggested that gifts be made from cash accounts of the Grantor which will be transferred to the Trust upon the death of the Grantor pursuant to Section 45-6-101 N.M.S.A. (1992 Cum. Supp.) (P.O.D. payee designation).

12

X.    The Trustee is to ascertain that the "Executor," as this term is used in the Internal Revenue Code, has made any elections required to utilize any exemptions from the generation skipping tax imposed by the Tax Reform Act of 1986, or any subsequent legislation.

9.2    Notwithstanding anything to the contrary contained herein, all the foregoing investment powers of the Trustee are subject to the condition that during the lifetime and competency of the Grantor no sales, exchanges, investments or reinvestments of property which may at any time comprise the Trust estate shall be made by the Trustee without first obtaining the written approval of the Grantor. If, after thirty (30) days after being informed of the Trustee's recommended action, the Grantor does not approve or disapprove, the Trustee may act in accordance with Trustee's own judgment and for the best interest of the Trust estate.

9.3    The Grantor may, from time to time, relinquish the power contained in the preceding paragraph with respect to Trust investment filed with the Trustee and signed by the appropriate party.

## X.  TRUSTEE'S ACCOUNTING

10.1    For its services, the Trustee shall receive such compensation as shall be fair, reasonable and customary unless the Trustee shall waive its right to such compensation. Trustee shall be reimbursed for out-of-pocket costs resulting from administration of this Trust.

10.2    The Trustee shall maintain accurate accounts and records and shall render to the adult beneficiary or beneficiaries, or his or her guardian, as the case may be, then entitled to the income from the Trust, statements of account of its receipts and disbursements of income and principal at least annually. If a corporate or independent Trustee is serving as Trustee during the lifetime of the Grantor, such Trustee shall, upon reasonable notice (not to exceed ten days), allow the Grantor, or after the death or disability of the Grantor, the Grantor's surviving children, inspection of the accounting records of the Grantor's assets held by the corporate or independent Trustee. The Trustee is not required to inform and account to beneficiaries by a public accounting unless legal action is brought by a beneficiary for an accounting.

13

10.3   The Grantor, and upon the Grantor's death or disability, the Grantor's surviving children who are of legal age, reserve the right to employ an accountant to prepare tax returns for the Grantor, the Trust, and the beneficiaries of the Trust, and Trustee shall cooperate in furnishing data to such authorized accountant so as to enable such accountant to prepare such tax returns.

10.4   No bond or other security shall be required of any Trustee of this Trust.

## XI.  TRUSTEE'S RESIGNATION

11.1   Any Trustee may resign at any time upon written notice given to the Grantor or in the event of the death of the Grantor, upon written notice to the income beneficiary or beneficiaries and upon such resigning Trustee's submittal of accounts to said beneficiaries and upon such beneficiaries approval.  For the purpose of this Agreement the term "income beneficiary" shall mean a person then entitled to receive income from the Trust estate whether in the discretion of the Trustee or otherwise.  Upon such resignation and if no other Trustee is designated, the proper person or persons shall appoint a Successor Trustee as provided in Article XII below.

## XII.  SUCCESSOR TRUSTEE

12.1   Powers, Duties and Responsibilities of Successor Trustee.  All authority and powers, including discretionary powers, conferred on the original Trustee shall pass to said successor.  The Successor Trustee shall have no responsibility for the acts or omissions of any prior Trustee, and no duty to audit or investigate the accounts or administration of any such Trustee, nor, unless in writing requested so to do by a person having a present or future beneficial interest under this Trust, shall such Successor Trustee have any duty to take action to obtain redress for breach of Trust.

12.2   No Bond or Public Accounting Required.  The Trustee shall not be required to post any bond or other security for the faithful performance of any duties and obligations in such office or to make a public accounting of assets or receipts and disbursements unless such accounting is challenged in Court by a beneficiary.

12.3   Appointment of Successor Trustee.  Any Trustee, or Successor Trustee, shall have the right to resign as Trustee at any time.  Upon such resignation, or in the event of the death or disability of a Trustee, and if the designated Trustees all refuse to serve, the

14

Grantor, or if unable, a majority of the Grantor's surviving children, may appoint a Successor Trustee except a resigning Trustee. The Grantor shall not have the authority to reappoint himself or herself, or a subservient party, as Trustee. If the persons possessing the authority are unable to appoint a Successor Trustee, a successor may be appointed by a court of competent jurisdiction upon petition of the resigning Trustee or of any person having an interest in this Trust.

12.4    Power to Remove a Trustee. The Grantor shall have the right to remove any Trustee of this revocable Trust. Upon the Grantor's death or disability, a majority of the Grantor's surviving children, may remove any Trustee of this Trust for reasonable cause and, in the event no other Successor Trustee has been nominated in this Trust Agreement, they shall have the right to appoint a Successor Trustee, so long as such Successor Trustee appointed by the Grantor's children is a bank or Trust company, possessing Trust powers. Such removal of a Trustee by the children of the Grantor shall be for reasons such as change of domicile, poor recordkeeping or accounting, poor investment record, serious conflict of personalities which could affect performance and operation of the Trust estate and like causes.

## XIII. PAYMENT OF DEBTS, ESTATE TAXES AND ADMINISTRATION COSTS

13.1    Payment of Debts, Expenses and Taxes. Upon the death of the Grantor, the Trustee shall pay from the decedent's Trust estate the valid debts, last illness expenses and income taxes, funeral expenses of administration, all estate, inheritance, succession and other death taxes of the Grantor, including any penalties and interest thereon, to the extent that all such expenses, debts and taxes cannot otherwise be satisfied from the liquid assets (cash, marketable securities, etc.) forming part of the Grantor's probate estate (unless provided otherwise in this Trust). However, the Trustee shall not use any assets to pay such debts, expenses or taxes to which the charitable or marital deductions apply and are claimed by the Grantor's estate on the estate tax return. Additionally, the Trustee shall not be required to pay off any debt which is secured by a mortgage or similar encumbrance, and the Trustee may distribute such property subject to such encumbrance unless otherwise provided elsewhere in this Trust.

13.2    Trustee Payment Options and Elections. The Trustee may make all such payments directly or may make such payments to the Personal Representative of the Grantor's estate. The preceding provisions shall not preclude the Trustee or "Executor" from exercising any right to pay such taxes in installments under I.R.C. Section 6166, as amended, or its successor, nor shall any such provision be construed as accelerating any payments or as granting any right of action to any creditor.

13.3    Tax Apportionment Among Beneficiaries. All taxes related to the Grantor or the Grantor's estate, this Trust, or any asset subject to tax as a part of the Grantor's estate (for federal or state tax purposes) shall be apportioned among the beneficiaries receiving a portion of such assets pursuant to N.M.S.A. Section 45-3-916 unless otherwise provided elsewhere in this Trust.

## XIV.  SPENDTHRIFT PROVISION

14.1    No principal or income distributable to or to become distributable under any Trust created by this instrument may be assigned or encumbered by any beneficiary (other than the Grantor) thereof, or be attached by or subjected to the interference or control of any creditor of such beneficiary or reached by any legal or equitable process in satisfaction of any debt or liability of such beneficiary prior to its actual receipt by such beneficiary.

## XV.  CONTINGENT TERMINATION PROVISION

15.1    In no event shall any Trust be permitted to extend beyond the period allowed by the rule against perpetuities, but shall terminate within the time prescribed by the rule, unless a new perpetuities period is allowed for an appointed interest, and such Trust shall be distributed, per stirpes, by the Trustee.

## XVI.  INCONTESTABILITY

16.1    Forfeiture of Interest in Trust. The provisions of this Trust and the Grantor's last Will are intended to be in lieu of any other rights, claims, or interests of any nature of any beneficiary of this Trust, whether statutory or otherwise. Accordingly, if any beneficiary of this Trust asserts any claim, right, interest or statutory election against the Grantor's estate, last Will, or any properties of this Trust, which is not pursuant to the express terms of this Trust or of the Will, then such beneficiary shall thereby absolutely forfeit any beneficial interests which such beneficiary might otherwise have under this instrument.

This provision shall also apply if a beneficiary contests, disputes or calls into question (directly or indirectly) the validity of this Trust Agreement or the Will, before any tribunal or court. In the event of any such forfeiture, the interests of the other beneficiaries hereunder shall thereupon be appropriately and proportionately increased.

16.2    Forfeiture of Other Rights and Powers. In addition, all of the provisions of this instrument that confer any benefits, powers, or rights upon such claiming, electing or contesting beneficiary, shall immediately become absolutely void and revoked. If such beneficiary is then serving as a Trustee of this Trust, that beneficiary shall automatically cease to be a Trustee and shall thereafter be ineligible to select, remove, or become a Trustee of this Trust.

16.3    Permitted Actions. The foregoing paragraphs shall not be construed to limit the appearance of any beneficiary as a witness in any proceeding involving this Trust Agreement or the Will,  nor to limit any beneficiary's appearance in any capacity in any proceeding solely for the construction of either of such documents. Additionally, nothing in the foregoing paragraphs shall restrict a beneficiary from taking action to collect a bona fide pre-death debt owed to such beneficiary by the Grantor, the Trust or a business entity owned by the Grantor or the Trust.

## XVII.  APPLICABLE LAW

17.1    This Trust is established and accepted by the Trustee under the laws of the State of New Mexico, and all questions concerning its validity and construction shall be determined under such law. Any questions relating to the administration of this Trust shall be determined by the law of the situs of the Trust at that time."

IN WITNESS WHEREOF, the parties hereto have set their hands the day and year first above written.

_____
WILLIAM O. BREEDLOVE, III, GRANTOR

_____
WILLIAM O. BREEDLOVE, III, CO-TRUSTEE

_____
CORINE N. BREEDLOVE, CO-TRUSTEE


STATE OF NEW MEXICO          )
                             ) ss.
COUNTY OF BERNALILLO         )

On this ___ day of _____, 2003, before me personally appeared WILLIAM O. BREEDLOVE, III and CORINE N. BREEDLOVE, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

_____
NOTARY PUBLIC

My Commission Expires:

_____

18

# LAST WILL AND TESTAMENT
## OF
## WILLIAM O. BREEDLOVE, III

I, WILLIAM O. BREEDLOVE, III, currently residing at 2260 Laguna Dr., Las Cruces, NM 88005, being of legal age, make, publish and declare this instrument to be my Last Will and Testament, hereby revoking all other Wills and Codicils I may have previously made.

## ARTICLE I
## FAMILY STATUS AND
## FAMILY AND PERSONAL PROPERTY ALLOWANCES

I declare that I am married to CORINE N. BREEDLOVE and that there have been no children born of this marriage. I have three (3) children from a prior marriage, who are WILLIAM OTWAY BREEDLIVE, IV, ROBERT SHAWN BREEDLOVE and KIMBERLY ANN HOFFMAN. I have no other children, natural-born or adopted, living or deceased.

It is my intent that this Will govern the disposition of my Estate and that such dispositions be in lieu of any benefit available to my spouse and my children under the Family Allowance and the Personal Property Allowance set forth in the New Mexico State Probate Code. To the extent my spouse or any child of mine claims either of these statutory allowances, his or her share of my Estate under the terms of this Will shall be reduced, dollar for dollar, for the amount required to be distributed to him or her pursuant to the statutory allowances.

## ARTICLE II
## PERSONAL REPRESENTATIVE

I nominate and appoint CORINE N. BREEDLOVE to be the Personal Representative and Trustee of my Estate. If CORINE N. BREEDLOVE fails to qualify or ceases to act as such, I nominate and appoint WILLIAM OTWAY BREEDLOVE, IV to be the Personal Representative and Trustee. If WILLIAM OTWAY BREEDLOVE, IV fails to qualify or ceases to act as such, I nominate and appoint ROBERT SHAWN BREEDLOVE to be the Personal Representative and Trustee. If ROBERT SHAWN

1

BREEDLOVE fails to qualify or ceases to act as such, I nominate and appoint KIMBERLY ANN HOFFMAN to be the Personal Representative and Trustee. No bond or security shall be required in any jurisdiction for such person to serve in such capacity.

## ARTICLE III

## PERSONAL REPRESENTATIVE DUTIES

The expenses of my last illness, funeral expenses and costs of the administration of my Estate shall be paid out of my residuary Estate. All taxes related to my Estate or any asset subject to tax as a part of my Estate (for federal or state tax purposes) shall be apportioned among the beneficiaries of my Estate and such assets in the manner described in NMSA 1978, Section 45-3-923 (2011), unless otherwise specifically provided elsewhere in this Will.

My Personal Representative is authorized to sell any assets of my Estate at a public or private sale, or to lease such assets on the terms and conditions the Personal Representative deems to be in the best interest of my Estate.

## ARTICLE IV

## TANGIBLE PERSONAL PROPERTY LIST

I direct my Personal Representative to distribute my tangible personal property in the manner directed in any written statement or list prepared by me in my own handwriting, or which is signed by me, in accordance with NMSA 1978, Section 45-2-513 (1993). I acknowledge that the foregoing statute does not permit me to make cash gifts by use of such list and that I may only dispose of tangible personal property in this manner. If no such statement or list is found within three (3) months of my death, it shall be conclusively presumed that no such statement or list exists. Any tangible personal property of mine that is not disposed of by such statement or list shall be distributed as a part of my residuary Estate under Article V below.

If the beneficiary of any tangible personal property under this Article is a minor at the time of my death, the Personal Representative may retain such item(s) until the beneficiary attains the age of majority. The Personal Representative shall also have the discretionary authority to deliver the tangible personal property to the beneficiary or to an adult with whom the beneficiary resides, to be held by such person for delivery to the beneficiary when he or she reaches the age of majority. No bond shall be required of

2

the person to whom the tangible personal property is delivered on behalf of a minor beneficiary. The receipt for such tangible personal property executed by the minor beneficiary or the adult to whom it is delivered shall completely discharge the Personal Representative with respect to such delivery.

## ARTICLE V
## RESIDUARY ESTATE

My residuary Estate shall be distributed to the Trustee (or Successor Trustee) of the BREEDLOVE TRUST A, as amended from time to time, which was executed before this Will, to be held by the Trustee under the same conditions and for the same purposes as stated in the Trust Agreement, to be administered as part of That Trust, all as provided under the new Mexico Uniform Testamentary Additions to Trust Act. The Trust Agreement establishing the BREEDLOVE TRUST A, as it may be amended from time to time prior to my death, shall govern the terms for the division and distribution of my residuary Estate. If for any reason this Trust is not in existence at the time of my death, is held to be inoperative, invalid, void or this devise otherwise fails, then I hereby devise my residuary Estate to the Trustee (or Successor Trustee) named in such Trust Agreement, as amended, and hereby incorporate the provisions of such Trust Agreement, as amended, into my Will by this reference. Thereafter, the division and distribution of my residuary Estate shall be governed by the terms of that Trust Agreement, as amended.

No person dealing with the distribution of any asset or property comprising a part of my residuary Estate to the Trustee or Successor Trustee of the BREEDLOVE TRUST A shall be required or empowered to ascertain the powers of the Trustee, the identity of the beneficiaries of such Trust or the dispositive provisions of the Trust. The Trustee or Successor Trustee shall have the power to convey, transfer and encumber the assets and properties conveyed as a part of my residuary Estate in the same manner as though the Trustee or Successor Trustee were the absolute owner of such assets and properties.

3

## ARTICLE VI

## DEFINITION OF TERMS

The words "child", "children" and "issue" as used in this Will shall include lineal descendants and children who were legally adopted when they were under the age of eighteen (18) years.

## ARTICLE VII

## SURVIVORSHIP REQUIREMENT

For purposes of this Will, a person shall not be deemed to have survived me if such person dies within sixty (60) days after my death.

## ARTICLE VIII

## PERSONAL REPRESENTATIVE'S AND TRUSTEE'S POWERS

In addition to the powers accorded to Personal Representatives and Trustees under the New Mexico Statutes Annotated or by other law, and by way of illustration and not limitation of powers, my Personal Representative and Trustee shall have the following powers, duties and discretions:

A.    Description of Assets. Power to determine what property or assets are covered by any general descriptions contained in the Will.

B.    Payment of Debts, Expenses and Devises. Power to pay a Grantor's debts, expenses of last illness and funeral expenses out of the Grantor's residuary estate (unless otherwise provided elsewhere in this Will). Such amounts may be paid at the earliest convenient date, in the Trustee's discretion, without waiting for any time period prescribed by law.

C.    Investment and Retention of Trust Assets. Power to invest, reinvest, buy or sell assets of the Trust, or for the Trust, or to retain any Trust assets for any period of time, in the Trustee's discretion. The Trustee shall also have the power to retain unproductive assets, except as otherwise provided in this Article VIII, or elsewhere in this Will.

D.    Marital Deduction. No power granted under this Will shall authorize the Trustee to take any action, or exercise such power in any manner, relative to any assets designated (or set aside) for the marital deduction that would in any way defeat the marital deduction allowed for federal estate tax purposes. If there is any property held in a Trust created under the terms of this Will that is eligible for the marital deduction, and on which the marital deduction has been claimed or to which such Trust is entitled under I.R.C. Section 2056, as amended from time to time, the surviving spouse shall have the right and power to direct the Trustee to invest any unproductive assets into income producing assets. No estate taxes, other taxes, or administration expenses

4

shall be paid from the assets used to fund the marital deduction unless all other available Trust assets have been exhausted.

E.    Funding of Trusts.  In funding any marital deduction, or any portion of a Trust on which the marital deduction is used, the Trustee shall be required to use assets that qualify for the marital deduction.  Otherwise, the Trustee shall have the sole discretion to allocate assets (or undivided interests in assets) in cash or in kind, in installments or all at once, or in any manner the Trustee deems in the best interests of the beneficiaries of the Trust.  The Trustee shall not be required to secure the consent of any beneficiary concerning the Trustee's determination of how to divide or allocate Trust assets in funding any Trust or interest of any beneficiary under this Will.  Each asset distributed in kind to satisfy a pecuniary devise (meaning a "specific dollar amount") shall be valued at its date of distribution value.

The Trustee shall consider the income tax consequences of funding a pecuniary devise with "income in respect of a decedent", as defined in I.R.C. Section 691 (which involves income that has not been taxed prior to the deceased Grantor's death), or with assets that have appreciated in value since the date of the deceased Grantor's death. The final decision of the Trustee concerning the funding of a pecuniary devise with appreciated assets or "income in respect of a decedent" assets shall be binding on the Trust beneficiaries.  However, the Trustee is hereby specifically instructed to use assets that are treated as "income in respect of a decedent" to satisfy any charitable devises prior to using any other Trust assets for such purpose, unless the charitable devise itself specifies a different asset to use for funding such devise.

F.    Operation of Business and Commercial Assets.  Power to continue to operate any business interests of any kind, ranches or farms (hereafter referred to as "business" assets).  This power shall be deemed to exist regardless of the type of entity or form in which such business asset is held.

G.    Oil, Gas and Mineral Interests.  Power to own and hold oil, gas and mineral interests or natural resources of any kind (hereafter collectively called "mineral interests").  To drill, test, explore, mine, lease, sublease, or develop any mineral interests, whether they are held independently or jointly with others.  To pay from Trust principal or income all delay rentals, lease bonuses, royalties, overriding royalties, taxes, assessments and other charges.  To surrender or abandon any mineral interests, or to enter into farm-out, pooling or unitization agreements in connection with such interests.  To produce, process, sell or exchange all production from such mineral interests.  The exercise of the foregoing powers shall be solely in the Trustee's discretion.

H.    Borrowing and Encumbrances.  Power to borrow money in the name of the Trust (or any Trust created under this Will) and to encumber the assets of the Trust as security for such borrowing.  The amount to be borrowed and all terms of such loans shall be solely within the discretion of the Trustee.

5

I.      Ancillary Trustees and Independent Administration.  Power to appoint an Ancillary Personal Representative or Trustee to probate or administer any properties or assets held in another state, as well as the power to have an independent administration in states permitting such independent administrations.

J.      Stock of Corporate Trustee.  Power to retain the capital stock of any corporate Trustee and its affiliates.  The Trustee is authorized to exercise full Trust powers over such stock under the terms of this Will, to the extent permitted by law.  This power shall include the right to purchase additional stock of the corporate Trustee, its affiliates or successors under any preemptive stock rights, the right to receive stock dividends and the right to exchange such stock in any reorganization or merger.

K.      Brokerage Accounts.  Power to establish or continue a street name account or margin account with any brokerage firm.  To borrow monies from any brokerage firm and to purchase securities and pledge the assets of the Trust as collateral security for such borrowing.  No such brokerage firm shall be held liable for the application of any such loan proceeds or the application of any assets acquired in street name or in a margin account.

L.      Manner of Payment to Beneficiaries.  Power to make any payment due directly to the beneficiary, to a minor or incapacitated beneficiary's legally appointed guardian or conservator, or to the parent of a minor beneficiary.  The Trustee shall also have the authority to make distributions on behalf of a beneficiary rather than directly to the beneficiary or any of the other persons described above.

M.      Determination of Manner of Distribution.  Power to determine the manner in which to make any distribution to a beneficiary, in cash or in kind (or any combination thereof), outright or as an undivided interest, and without being required to make a pro rata distribution of any specific asset unless otherwise specifically required by another provision of this Will.  In making such distributions, the Trustee shall consider the factors enumerated in paragraph VIII, E above concerning the funding of pecuniary devises and in allocating assets to any Trusts or beneficiaries.  However, the Trustee shall not be required to secure the consent of any beneficiary or beneficiaries to the Trustee's determination of the manner in which distributions are to be made or of which assets are to be distributed to any particular beneficiary.  The decisions made by the Trustee concerning such distributions shall be within the Trustee's discretion and shall be binding on all beneficiaries of the Trust.

N.      Determination of Principal and Income.  Power to allocate the receipts and disbursements of the Trust between income and principal in a manner consistent with the NM Principal and Income Act.

O.      Various Tax Elections.  Power to make all tax elections with regard to a deceased Grantor's estate tax return, including (but not limited to) the payout of taxes under I.R.C. Section 6166.  To file a joint return with the surviving spouse for income tax reporting.  To elect alternative methods of handling qualified employee benefits and

6

retirement plan assets.  All references to any I.R.C. Sections in this Will shall also be deemed to include any applicable regulations thereunder.

P.    Special Use Valuation Election.  Power to make an election to use date of death values or optional values or valuation methods permitted under I.R.C. Section 2032A.  If such election is made by the "Executor", the Trustee shall have the responsibility of assuring that the requirements of Section 2032A related to special use valuation are met.  In particular, the Trustee shall determine that the qualified heirs meet the material participation requirements in the management and operation of the special use property and to distribute the income from such property to the qualified heirs.

Q.    Stock Redemption to Pay Estate Taxes.  Power to redeem corporate stock under I.R.C. Section 303 in an amount not in excess of all estate, inheritance, legacy and succession taxes (including any interest collected as part of such taxes), and the amount of any funeral and administration expenses allowable as deductions to the deceased Grantor's estate under I.R.C. Section 2053 (and Section 2106 when applicable).  None of the assets received by the Trustee, or other fiduciary, in redemption of such shares shall be used to satisfy any specific devises, other than a pecuniary devise to a credit shelter or exemption equivalent Trust or to any marital or charitable deduction devise, unless such other distribution is directed by the Grantor's Will or by a Buy-Sell Agreement governing the stock of the corporation.  Any such redemption shall be subject to any Buy-Sell Agreement or Redemption Agreement covering the shares that is then in force.

R.    Generation Skipping Tax Exemption.  Power to make the generation skipping tax ("GST") exemption election (or to assure that the person designated as the "Executor" under the Internal Revenue Code has made such election if that is someone other than the Trustee), to the extent the Trustee deems such an election beneficial. The Trustee shall have the power to divide a single Trust into two or more Trusts in order to assure that each Trust has an "inclusion ratio" of either zero (a "GST Exempt Trust) or one ( a "GST Nonexempt Trust").

If more than one Trust is established, the Trustee shall have the sole discretion to distribute assets to each Trust in such amounts as will preserve each Trust's inclusion ratio of zero or one.  Any such division must be made on a fractional basis. Whenever a Trust is divided in this manner, each Trust shall have all of the same provisions as the original Trust that was so divided.  However, the Trustee may exercise this power differently with respect to each of the separate Trusts.  Any beneficiary of a share of a GST Nonexempt Trust shall have a testamentary general power of appointment exercisable in his or her Will, by specific reference to this Trust provision.

S.    Nominee Partnerships.  Power to register real estate, personal property (tangible or intangible), documents of title to vehicles or any other property or property rights in the name of a Nominee Partnership.  The Trustee shall also have the power to hold such assets in unregistered form or in such other form that will allow title to pass on delivery of such asset.

7

T.    S Corporation Trusts. Power to establish qualified Subchapter S Trusts pursuant to I.R.C. Section 1361(d) and to take all actions necessary to create or preserve the corporation's S election for any shares held in any Trust created under the terms of this Will.

U.    Employment of Advisors and Agents. Power to employ attorneys, accountants, investment advisors, specialists, appraisers and such other advisors and agents as the Trustee deems necessary or desirable. The Trustee shall have the authority to appoint an investment manager(s) to manage a part, or all, of the Trust assets and to delegate to such manager(s) the discretion to make investment decisions. Such delegation of power shall include the power to acquire and dispose of such assets. The compensation and fees of such advisors and agents shall be an expense chargeable to the Trust.

V.    Authority to Delegate Trustee Duties by Power of Attorney. Any Personal Representative or Trustee shall have the power to delegate any decision or action the Trustee has the power to make, to any person he or she designates in a duly executed Power of Attorney. The Power of Attorney shall list the specific action or power delegated and any time limitations placed on the term of such Power of Attorney. Such Power of Attorney shall also specifically state that such person is acting on behalf of the Trustee as the Trustee's Attorney-in-Fact and shall specifically name this Trust.

## ARTICLE IX

### SPENDTHRIFT PROVISION

Except as otherwise provided in this Will, no beneficiary may anticipate, assign, encumber, sell or transfer any benefits to be derived under this Will and no assignment, action, claim or transaction in anticipation of the income or principal of any Trust created under the terms of this Will shall be valid. No interest of a beneficiary in income or principal of the Trust shall be subject to the claims of any creditor of any such beneficiary. No beneficiary's interest in the Trust shall be subject to attachment, garnishment, execution or other legal or equitable process or lien brought by, or in favor of, a creditor. However, this clause shall not be construed as prohibiting disclaimers.

## ARTICLE X

### INCONTESTABILITY

10.1    Forfeiture of Interest in Will. The provisions of this Will, and any Trust created hereunder, are intended to be in lieu of any other rights, claims or interests of any nature of any devisee or beneficiary (hereafter referred to collectively as a "beneficiary"), whether statutory or otherwise. Accordingly, if any beneficiary asserts

any claim, right, interest or statutory election against a Grantor's estate, Will or any Trust, which is not pursuant to the express terms of this Will, then such beneficiary shall absolutely forfeit any beneficial interests which such beneficiary might otherwise have under this instrument.  This provision shall also apply if a beneficiary contests, disputes or calls into question (directly or indirectly) the validity of this Will before any tribunal or court.  In the event of any such forfeiture, the interests of the other beneficiaries hereunder shall be increased in proportion to their relative portions of my Estate to which they are otherwise entitled.

10.2   <u>Forfeiture of Other Rights and Powers</u>.  In addition, all of the provisions of this instrument that confer any benefits, powers or rights upon the claiming, electing or contesting beneficiary, shall immediately become absolutely void and revoked.  If such beneficiary is then serving as a Personal Representative or Trustee, that beneficiary shall automatically cease to be a Personal Representative or Trustee and shall thereafter be ineligible to select, remove or become a Personal Representative or Trustee.

10.3   <u>Permitted Actions</u>.  The foregoing paragraphs shall not be construed to limit the appearance of any beneficiary as a witness in any proceeding involving this Will, or to limit any beneficiary's appearance in any capacity in any proceeding solely for the construction of this document.  Additionally, nothing in the foregoing paragraphs shall restrict a beneficiary from taking action to collect a bona fide pre-death debt owed to such beneficiary by me, my Estate or a business entity in which I own an interest at the time of my death.

IN WITNESS WHEREOF, I have signed this document and declared that it is my Last Will and Testament in Albuquerque, New Mexico, on _____May 05,_____ , 2021.


_____
WILLIAM O. BREEDLOVE, III

9

The foregoing instrument was executed by the person whose name appears above and declared to be such person's Last Will and Testament in the presence of each of us, and at such person's request, we have executed this document in such person's and each other's presence on the date shown above, as witnesses.

_____    residing at _4830 Juan Tabo Blvd. NE, Ste F_
Signature of Witness                          _Albuquerque_____, New Mexico

_____    residing at _4830 JUAN TABO BLVD NE, STE.F_
Signature of Witness                          _ALBUQUERQUE_, New Mexico

10

## SELF PROVING AFFIDAVIT

STATE OF NEW MEXICO )
                                 ) ss.
COUNTY OF BERNALILLO )

We, WILLIAM O. BREEDLOVE, III, the Testator, and
_Peter J. Armijo_ and _FELISHA CALLAWAY_, the Witnesses, whose names are signed on the foregoing document, after first being duly sworn, declare to the undersigned authority that the Testator declared the foregoing document to be his Last Will and Testament and that he executed the document willingly and voluntarily, or directed another person to sign it on his behalf, for the purposes stated in the Will; that in the presence of each other, the Witnesses saw the Testator sign the Will, or direct another person to sign it for him, and that the Testator saw each of the Witnesses sign the Will, as Witnesses, in the presence of each other; and to the best of their knowledge, the Testator had reached the age of majority, was of sound mind and was under no constraint or undue influence.

_William O Breedlove III_
WILLIAM O. BREEDLOVE, III

_[signature]_
Witness

_[signature]_
Witness

Subscribed, sworn to and acknowledged by WILLIAM O. BREEDLOVE, III, the Testator, and _Peter J. Armijo_ and _FELISHA CALLAWAY_, the Witnesses, on _May 5_, 2021.

_Susan J Alexis_
Notary Public

My commission expires:
_Oct 10, 2024_



OFFICIAL SEAL
Susan J. Alexis
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 10/10/24

S:\Data\CLIENTS\BRE00101\Will.H.2021.docx

11